IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASIN OLIPHANT, | ) | CASE NO. 3:18 CV 0861 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN WAINWRIGHT, | ) | JONATHAN D. GREENBERG |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Jasin Oliphant ("Oliphant" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Oliphant is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Oliphant*, Lucas County Court of Common Pleas Case No. G-4801-CR-0201202836-000.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

   
F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Oliphant's conviction as follows:

> {¶ 5} The charges stem from an incident that occurred on October 29, 2012,
> in which appellant shot at two individuals, shot out the widows of one of the
> victim's vehicles, doused the vehicle with gasoline, lit the vehicle on fire, and
> fled the scene. After fleeing the scene, appellant was pursued by Toledo police
> in a high speed chase. Appellant was eventually caught after wrecking the
> getaway vehicle and attempting to flee on foot. Inside appellant's wrecked
> vehicle was a loaded gun, which contained bullets that matched the bullet
> casings found at the scene of the crime.

*State v. Oliphant*, 2017 WL 3981162, at *2 (Ohio App. 6th Dist. Sept. 8, 2017).

## II. Procedural History

### A.    Trial Court Proceedings

On November 2, 2012, the Lucas County Grand Jury indicted Oliphant on the following

charges: two counts of felonious assault in violation of Ohio Revised Code ("O.R.C.") §2903.11(A),

with a firearm specification (Counts One and Two); one count of arson in violation of O.R.C.

§2909.03(A)(1) and (B)(2)(b) (Count Three); carrying a concealed weapon in violation of O.R.C.

§2923.12(A)(2) and (F) (Count Four); and having a weapon while under disability in violation of

O.R.C. §2923.13(A)(2) (Count Five).  (Doc. No. 8-1, Exh. 1.)  On November 28, 2012, Oliphant

entered pleas of not guilty to all charges.  (Doc. No. 8-1, Exh. 2.)

On February 26, 2013, Oliphant withdrew his guilty plea and entered an *Alford*[1] guilty plea

to one count of felonious assault with a firearm specification, one court of arson, and one count of

having a weapon while under a disability.  (Doc. No. 8-1, Exh. 3.)  The state agreed to *nolle* Count

---

[1] Under *North Carolina v. Alford*, 400 U.S. 25 (1970), a defendant may enter into a plea
agreement for strategic reasons (e.g., fear of conviction at trial on this count and other counts
that may be dismissed as a result of the plea) even if he is "unwilling or unable to admit his
participation in the acts constituting the crime."  *Id.* at 37.

Two, with the attached firearm specification, and Count Four at sentencing.  (*Id.*)  The state also agreed not to pursue failure to comply charges resulting from the incident.  (*Id.*)

This matter proceeded to sentencing and on May 20, 2013, the court sentenced Oliphant to seven years on Count One, with an additional one year mandatory incarceration on the firearm specification, one year on Count Three, and three years on Count Five, to be served consecutively, for an aggregate sentence of 12 years.  (Doc. No. 8-1, Exh. 5.)  At the State's request, the court entered *nolle prosequi* as to Counts Two and Four.  (*Id.*)

**B.      Motion to Withdraw Guilty Plea**

On March 21, 2014, Oliphant, *pro se*, filed a motion to withdraw his guilty plea.  (Doc. No. 8-1, Exh. 6.)  In his motion, Oliphant raised three grounds for relief:

> I.      When a defendant's attorney outright lies to him in order to induce a plea by falsely representing to the defendant that he had worked out a plea agreement with the court and the state for a specific maximum sentence in exchange for a plea of guilty to all charges, the plea entered by the defendant is completely unconstitutional and cannot be said to be knowingly, voluntarily or intelligently made. The attorney's improper actions have resulted in a manifest miscarriage of justice and should be vacated.
>
> II.      An evidentiary hearing should be held on this defendant's claim because the facts alleged concerning the way the plea was induced, require this court, if proven true, to vacate the plea.
>
> III.      When an attorney's performance falls below the standard of reasonableness by outright lying to his client to induce a plea, his actions clearly prejudice the defendant and it is also true that had it not been but for the attorney's lies, this defendant would have gone to trial.

(*Id.*)

The State filed a brief in opposition (Doc. No. 8-1, Exh. 7), to which Oliphant replied.  (Doc. No. 8-1, Exh. 8.)

On August 15, 2014, the trial court held a hearing on Oliphant's motion to withdraw his

3

guilty plea. (Doc. No. 8-1, Exh. 9.) The trial court appointed counsel to represent Oliphant at this hearing. (Doc. No. 8-1, Exh. 18.) Oliphant, his girlfriend, and trial counsel testified at the hearing. (Doc. No. 8-3 at 3.) The trial court granted appointed counsel's request for a transcript of the proceedings and gave counsel two weeks from the receipt of the transcript to file a memorandum in support of Oliphant's motion for a new trial. (Doc. No. 8-1, Exh. 9.)

On May 26, 2015, Oliphant, through counsel, filed a memorandum in support of his motion to withdraw his guilty plea. (Doc. No. 8-1, Exh. 10.) The State filed a brief in opposition. (Doc. No. 8-1, Exh. 11.) Oliphant, through counsel, then filed a supplemental memorandum in support of his motion to withdraw his guilty plea. (Doc. No. 8-1, Exh. 13.) This supplemental memorandum raised an additional argument:

> I.  Defendant's guilty pleas were not knowingly, intelligently, and voluntarily offered due to counsel's promise of a six year sentence and Defendant's justifiable reliance on counsel's promise.

(*Id.*) The State filed a supplemental brief in opposition. (Doc. No. 8-1, Exh. 14.)

Oliphant, *pro se*, filed a request for leave to respond to the State's supplemental brief in opposition. (Doc. No. 8-1, Exh. 15.) The State moved to strike Oliphant's *pro se* request for leave. (Doc. No. 8-1, Exh. 16.)

On April 22, 2016, the trial court denied Oliphant's motion to withdraw his guilty plea. (Doc. No. 8-1, Exh. 18.) The trial court then denied Oliphant's *pro se* request for leave to file his own post-hearing brief and the State's motion to strike that request as moot. (*Id.*)

**C.  Appeal of Denial of Motion to Withdraw Guilty Plea**

Oliphant, *pro se*, filed a notice of appeal to the state appellate court, along with a motion for leave to file a delayed appeal. (Doc. No. 8-1, Exh. 19-20.) The state appellate court granted

4

the motion for delayed appeal and appointed counsel for Oliphant.  (Doc. No. 8-1, Exh. 21.)

On April 12, 2017, counsel for Oliphant filed an *Anders*[2] brief, raising two possible assignments of error:

I.    Ineffective assistance of counsel.

II.   Denial of motion to withdraw guilty plea.

(Doc. No. 8-1, Exh. 22.)  However, appointed counsel determined "there exist no grounds upon which any appeal could be based that are not frivolous" and moved for leave to withdraw.  (*Id.*)  The State filed a brief in response, agreeing with appointed counsel's conclusion.  (Doc. No. 8-1, Exh. 23.)

Oliphant, *pro se*, filed an opposition to appointed counsel's *Anders* brief and request for leave to withdraw.  (Doc. No. 8-1, Exh. 24.)  In his opposition, Oliphant raised the following assignment of error:

I.    The trial court erred in not granting this appellant's motion to withdraw his plea because attorney Stepanik's outright lying to this appellant and his family to induce the plea rendered it unconstitutional as such an improper action cannot possibly yeild[sic] a plea which is knowingly, voluntarily, or intelligently made, and its acceptance violates the 5th and 14th amendments of the U.S. constitution and at Article I, Section 16 of the Ohio Constitution.

(*Id.*)

The state appellate court decided it would treat Oliphant's opposition as a *pro se* brief.  (Doc. No. 8-1, Exh. 25.)  Oliphant moved the appeals court to reconsider its decision to treat his

---

[2] Pursuant to *Anders v. California*, 386 U.S. 738 (1967), if, after conscientious review, counsel appointed for an appellant finds the appellant's appeal to be "wholly frivolous," appointed counsel must inform the court of that determination and request to withdraw.  *Id.* at 744.  However, that request must "be accompanied by a brief referring to anything in the record that might arguably support the appeal."  *Id.*

opposition brief as a merits brief.  (Doc. No. 8-1, Exh. 26.)  The appeals court denied Oliphant's

motion for reconsideration.  (Doc. No. 8-1, Exh. 27.)

On September 8, 2017, the state appellate court affirmed the trial court's denial of

Oliphant's motion to withdraw his guilty plea.  (Doc. No. 8-1, Exh. 28.)

On October 10, 2017, Oliphant, proceeding *pro se*, filed a Notice of Appeal with the

Supreme Court of Ohio.  (Doc. No. 8-1, Exh. 29.)  In his Memorandum in Support of Jurisdiction,

Oliphant raised the following Propositions of Law:

> I.    When an attorney outright lies to his or her client to induce a plea in a
>       criminal case, the plea tendered is not constitutionally compliant as such
>       an action renders the plea not knowingly voluntarily and intelligently
>       made and the acceptance of such a plea and refusal to allow for
>       withdrawal of the plea violates the 5th, 6th, and 14th amendments of the
>       U.S. Constitution and the equivalent Articles and Sections of the Ohio
>       Constitution.
>
> II.   An attorney renders constitutionally ineffective assistance of counsel
>       when he lies to his client to induce a plea. This improper action violates
>       the 5th, 6th and 14th Amendments of the U.S. Constitution and the
>       Equivalent Articles and Sections of the Ohio Constitution.
>
> III.  When a witness has been found to be untruthful in part of his or her
>       testimony, none of the testimony should be believed. When a trial or
>       appellate court relies on this perjured testimony which is unreliable to
>       deny a criminal defendant relief.  Those courts violate the defendant's
>       constitutional rights to a fair trial and the due process of law guaranteed
>       by the 5th and 14th Amendments of the U.S. Constitution and the
>       equivalent Articles and Sections of the Ohio Constitution.

(Doc. No. 8-1, Exh. 30.)  The State did not file a response.  (Doc. No. 8-1, Exh. 31.)

On January 31, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the

appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).[3]

---

[3] The Court notes, upon review of the state court docket, Oliphant also filed two additional
*pro se* motions with the state trial court: a "Motion for Re-sentencing Based upon a Void

D.     **Federal Habeas Petition**

On April 5, 2018,[4] Oliphant filed a Petition for Writ of Habeas Corpus in this Court and

asserted the following grounds for relief:

> **GROUND ONE**: Plea Unconstitutional in violation of 5th, 6th and 14tyh [sic]
> Amendments
>
> > **Supporting Facts**: Trial counsel outright lied to this petitioner to
> > induce a pleaby [sic] falsely representing he had a deal worked out
> > in exchange for plea.
>
> **GROUND TWO**: Ineffective Assistance of Counsel at Sentencing in violation of
> the 5th, 6th and 14th amendment
>
> > **Supporting Facts**: When counsel lies to his client for any reason,
> > he renders effective [sic] assistance at sentencing and had it not
> > been but for counsel's untruthful advise [sic] this petitioner would
> > not have pled guilt.

(Doc. No. 1.)

On July 13, 2018, Warden Wainwright ("Respondent") filed his Return of Writ.  (Doc.

No. 8.)  Oliphant filed a Traverse on September 10, 2018.  (Doc. No. 10.)

_____

Judgment" and "Motion for Leave for Clearance."  The state trial court denied both of these
motions in March 2019.  *See State v. Oliphant*, Lucas County Case No. G-4801-CR-
201202836-000.

[4]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner
delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the
Petition herein did not arrive at the Court for filing until April 16, 2018, Oliphant states that
he placed it in the prison mailing system on April 5, 2018.  (Doc. No. 1 at 15.)  Thus,
the Court will consider the Petition as filed on April 5, 2018.

### III.  Review on the Merits

**A.**     **Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 336 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Renico v. Lett*, 559 U.S. 766, 777-79 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901 (2012).  *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 101 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. The Court noted that § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for

9

ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 102 ("If this standard is difficult to meet, that is because it is meant to be.").

### 1.      Ground One

In Ground One, Oliphant asserts that his guilty plea was unconstitutional in violation of the Fifth, Sixth, and Fourteenth Amendments.  (Doc. No. 1.)  In support, Oliphant maintains that trial counsel lied by representing "he had a deal worked out in exchange for plea" to induce Oliphant's guilty plea.  (*Id.*)  Oliphant asserts his trial counsel promised him his sentence would be six years, and had he "known that he was not getting the promised 6 years," he would not have pled guilty.  (Doc. No. 10 at 4.)  He contends his plea was therefore not voluntarily made and "equates to an unconstitutional plea."  (*Id.* at 6.)

Respondent maintains that "[a]lthough there is authority for the proposition that the denial of a motion to withdraw a guilty plea does not implicate a constitutional question where the motion is committed to the discretion of the trial judge and the state courts under the state rule," here the state appellate court made findings of fact "that are relevant to a complete adjudication of the merits of habeas ground one and should be considered."  (Doc. No. 8 at 12.)

Respondent argues the state appellate court properly found Oliphant entered into the plea knowingly, intelligently, and voluntarily.  (Doc. No. 8 at 18.)  Respondent notes the sentencing

10

hearing transcript "establishes that Oliphant was not told that his sentence would be 6 years." (*Id.*) Respondent also observes "the plea of guilty form which Oliphant signed, clearly states the maximum sentence" of 13.5 years. (*Id.*)

It is well-settled that a guilty plea must be entered knowingly, intelligently, and voluntarily, without coercion, in order to be considered valid. *See Bousley v. United States*, 523 U.S. 614, 618 (1998); *Brady v. United States*, 397 U.S. 742, 747 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). When a defendant waives his rights by entering a guilty plea, the record must clearly show the defendant had an understanding of the consequences of the plea and the constitutional rights being waived. *Boykin*, 395 U.S. at 242-44. A defendant must be informed of the waiver of his right against compulsory self-incrimination, to a jury trial, and to confront his accusers, *Boykin*, 395 U.S. at 243; "the actual value of any commitments made to him by the court, prosecutor, or his own counsel," *Brady*, 397 U.S. at 755 (citation omitted); the elements of the charge to which he is pleading guilty, *Henderson v. Morgan*, 426 U.S. 637, 647 (1976); and his potential sentencing exposure, *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009).

Oliphant raised this claim in his Motion to Withdraw Guilty Plea, and the appeal of the denial of this Motion to the state appellate court and the Supreme Court of Ohio. (Doc. No. 8-1, Exh. 6, 24, 30.)

The state appellate court made factual determinations that are relevant to adjudicating the merits of Ground One. *State v. Oliphant*, 2017 WL 3981162, at **1-3. The state appeals court considered Oliphant's claims regarding his motion to withdraw his guilty plea and rejected it on the merits as follows:

11

{¶ 25} A motion to withdraw a guilty plea is governed by Crim.R. 32.1, which provides: "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." *State v. Rencz*, 6th Dist. Sandusky No. S–16–001, 2016–Ohio–4585, ¶ 6.

{¶ 26} "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. The decision of whether manifest injustice occurred is left to the sound discretion of the trial court. *Id.* at paragraph two of the syllabus.

{¶ 27} Absent an abuse of discretion, an appellate court will not reverse a trial court's denial of a motion to withdraw a guilty plea. *State v. Nathan*, 99 Ohio App.3d 722, 725, 651 N.E.2d 1044 (3d Dist.1995). An "abuse of discretion" connotes that the trial court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 28} Here, as articulated above, appellant claims his plea was not entered into knowingly, voluntarily and intelligently because his counsel allegedly lied stating that appellant would not be sentenced to a prison term beyond six years.

{¶ 29} First, the written plea agreement unambiguously reveals appellant's potential prison term of 9 years and 54 months (13.5 years). Appellant confirmed for the court that he could read and write, and that he went over the agreement with his then counsel. The judge, prosecutor, trial counsel and appellant all signed the agreement.

{¶ 30} Further, the transcripts of the plea and sentencing hearings reveal trial counsel and the judge advised appellant of his constitutional rights, including his right to jury trial, to confront witnesses, to have compulsory process, to no self-incrimination, and to require proof of the crimes beyond a reasonable doubt. Appellant entered the guilty plea by his own free will and choice, and no one threatened or "made any promises" regarding the court's eventual sentence. The court repeatedly made statements regarding the maximum prison term, and even questioned appellant to confirm his understanding of the potential term. As stated above, the record reveals at sentencing appellant actually voluntarily stated that "seven" years incarceration would be detrimental to his development. This belies appellant's claim that he relied on any promise to be sentenced to six years.

12

{¶ 31} Based on our review, appellant was not precluded from entering a knowing, voluntary plea, nor was there manifest injustice by the trial court for us to deem its actions an abuse of discretion. We hold the court did not err in denying the withdrawal of appellant's plea, and thus we find no merit to this potential assignment of error.

*Id.* at **4-5.

The Court finds the state appellate court's determination that Oliphant's plea was entered into knowingly, voluntarily, and intelligently is neither contrary to nor an unreasonable application of clearly established federal[5] law.  Before entering his plea, Oliphant (and trial counsel) signed a written plea agreement that set forth a maximum basic prison term of nine years and 54 months, of which one year was mandatory.  (Doc. No. 8-1, Exh. 3.)  The written plea agreement also explicitly stated:

No promises have been made except as part of this plea agreement, stated entirely as follows: <u>State will nolle counts 2 and the firearm specification attached and count 4 a t time of sentencing. State will not pursue Failure to Comply charges resulting from the incident on 10/29/12.</u>

*Id.*

On February 26, 2013, the same day Oliphant signed the written plea agreement, the trial court held a hearing on the change of plea.  (Doc. No. 8-2.)  Oliphant confirmed he could read and write, that he was not under the influence of any drugs or alcohol, that he understood the nature of

---

[5] To the extent Oliphant is raising an argument he is entitled to habeas relief because the state trial court committed error when denying his motion to withdraw his guilty plea, this claim is not cognizable on federal habeas review.  *See, e.g., Xie v. Edwards*, 35 F.3d 567 (table), 1994 WL 462143, at *2 (6th Cir. Aug. 25, 1994) (district court properly found that the question whether a trial court abused its discretion in denying the petitioner's motion to withdraw his plea is a question governed by Ohio's statutes and case law that cannot support federal habeas relief absent a showing that the alleged error rendered the proceedings fundamentally unfair).

the charges, and that he had the opportunity to discuss the case with counsel.  (*Id.* at 4-12.)  The trial

court stated the maximum penalty Oliphant faced on the charges was 9 years plus 54 months, or 13.5

years, and asked Oliphant whether he understood that – Oliphant confirmed he did:

> **THE COURT:**    Okay.  Now, maximum penalties provided by law for these offenses are as follows: On court one, felonious assault, the basic mandatory – or I'm sorry – maximum basic prison term is 2, 3, 4, 5, 6, 7, or 8 years in jail and a fine up to $15,000.  Do you understand that?
>
> **DEFENDANT:**    Yes, Your Honor.
>
> **THE COURT:**    Now, with regards to the firearm specification as to count one, there's a mandatory period of incarceration of one year.  Mandatory incarceration means that you will serve every day of the one-year sentence and you'll serve that before you serve the sentence on any other case and that I have no discretion.  If I accept your plea, I have to sentence you to this one-year firearm specification and you'll serve every day of it.  Not eligible for any community control or any kind of early release.  Do you understand that?
>
> **DEFENDANT:**    Yes, Your Honor.
>
> **THE COURT:**    Okay.  With regards to count three, the arson charge, maximum penalty is 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, or 18 months in jail and a fine of up to $10,000.  Do you understand that?
>
> **DEFENDANT:**    Yes, Your Honor.
>
> **THE COURT:**    For having a weapon under a disability, maximum penalty is 9, 12, 18, 24, 30, or 36 months in prison and a fine of up to $5,000.  Do you understand that?
>
> **DEFENDANT:**    Yes, Your Honor.
>
> **THE COURT:**    Um, so that maximum penalty here that – now these

14

> sentences can be ordered served consecutively or one right after the other so that maximum period of incarceration you face is 9 years plus 54 months, which is 13 years and six months altogether.  Thirteen years and six months, of which one year is mandatory, with a maximum possible fine of $30,000.  Do you understand that?
>
> **DEFENDANT:**    Yes, Your Honor.

(*Id.* at 6-8.)

The trial court also questioned Oliphant with respect to promises made regarding the plea and any possible sentence:

> **THE COURT:** Apart from that plea bargain, has anybody made any threats or promises to get you to plead guilty to these three charges?
>
> **DEFENDANT:** No, Your Honor.
>
> **THE COURT:** Nobody made any promises to you with regards to my sentence, did they?
>
> **DEFENDANT:** No, Your Honor.

(*Id.* at 13.)

At the sentencing hearing on May 14, 2013, in a voluntary statement to the trial court, Oliphant said that "another five, six, *seven* years in the penitentiary is going to keep me – like, I'm not a bad guy." (*Id.* at 8) (emphasis added).  Furthermore, the trial court held an evidentiary hearing on Oliphant's motion to withdraw his guilty plea, at which both Oliphant and trial counsel testified. (Doc. No. 8-3.)  The trial court had the ability to consider both Oliphant's and trial counsel's testimony during this hearing, and ultimately denied Oliphant's motion to withdraw his guilty plea.[6]

---

[6] Oliphant makes much of his assertion that trial counsel perjured himself during a grievance hearing before the Lorain County Bar Association and, therefore, his testimony in the hearing on Oliphant's motion to withdraw should not be believed.  He cites the Supreme

(Doc. No. 8-1, Exh. 18.)  Based on the above, the Court finds no basis for Oliphant's argument that his plea was not entered into knowingly, intelligently, and voluntarily.

In his Traverse, Oliphant acknowledges he told the state trial court that no promises were made to him regarding his sentence. (Doc. No. 10 at 3.) However, Oliphant attempts to circumvent this fact by contending it is a "matter of rule" for criminal defendants to "answer this question in the negative to avoid having their deals lost." (*Id.*)  Essentially, Oliphant is advancing the proposition that all Ohio criminal defendants who enter plea agreements are expected to lie to the trial court during their plea hearing in order to obtain a promised sentence.  The Court finds this assertion, for which Oliphant provides no support or basis, dubious.  Furthermore, a defendant's subjective belief or impression regarding a promised sentence cannot serve as a basis to set aside and disregard what defendants inform the court during the plea colloquy.  As the Sixth Circuit explained in an analogous case where a defendant attempted to withdraw his guilty plea after sentencing:

> If we were to rely on Ramos's alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite.  This we will not do, for the plea colloquy process

---

Court's decision in *United States v. Norris*, 300 U.S. 564 (1937), in support.  First, *Norris* rejected recantation as a defense to perjury and has since been superseded by statute.  *U.S. v. Roche*, Crim. A. No. 91–595–13, 1992 WL 129634, at *4 (E.D. Penn. June 9, 1992). Second, the trial court found that trial counsel did not lie in the Lorain County Bar Association grievance investigation. (Doc. No. 8-1, Exh. 18 at 21.)  Third, even if *Norris* applied, assuming Oliphant's trial counsel promised him a maximum sentence of six years, then *Oliphant himself* admittedly lied to the court when he testified that no promises outside the plea agreement had been made.  Therefore, by his own reasoning, none of *his* testimony in the hearing on his motion to withdraw his plea should be believed.  Therefore, *Norris* is of no avail to Oliphant.

16

> exists in part to prevent petitioners such as Ramos from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. U.S.*, 781 F.2d 85, 90 (6th Cir. 1986).

Oliphant also makes much of the fact that he filed complaints with the Lorain County Bar Association and the Ohio Supreme Court Disciplinary Counsel. (Doc. No. 10 at 2.) However, the fact that Oliphant filed complaints against his attorney does not establish that his plea was not entered into knowingly, voluntarily, or intelligently. Indeed, Oliphant's position is that his attorney "promised" him a six-year sentence. However, this is directly at odds with the plea form and the plea hearing transcript, which show Oliphant explicitly was warned, and confirmed he understood, that his sentence could be as high as 13 years and six months.

Accordingly, and for all the reasons set forth above, the Court finds Ground One is without merit and should be denied.

### 2.     Ground Two

In Ground Two, Oliphant claims that his trial counsel allegedly lying to him about a promised sentence constituted ineffective assistance of counsel. (Doc. No. 1 at 7.) Oliphant's arguments that his counsel was ineffective is closely tied to his argument that his guilty plea was not knowingly, intelligently, and voluntarily made. Oliphant asserts the state courts failed to properly consider his ineffective assistance of counsel claim below, as the "2-prong Strickland analysis was tainted by the state court's improper reliance on attorney Stepanik's testimony he never made such a promise." (Doc. No. 10 at 8.) Oliphant argues the state court's reliance on trial counsel's testimony violated *Norris*, since "it had been shown he lied under oath, when considering

17

his testimony to the Bar Association in that legal proceeding . . . ."  (*Id.*)

Respondent asserts that the state appellate court properly recited the double-pronged standard in *Strickland*, and properly applied that standard to conclude that Oliphant's trial counsel performed effectively on Oliphant's behalf under the circumstances of this case.  (Doc. No. 8 at 21-22.)

"[T]he Supreme Court has held that 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'"  *Carley v. Hudson*, 563 F. Supp. 2d 760, 771 (N.D. Ohio 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).  Under *Strickland*, a petitioner must demonstrate the following: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  To satisfy the second prong in the guilty plea context, a petitioner "must show that there is a reasonable probability that but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 58–59.  *See also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013).

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  Indeed, the Supreme Court has repeatedly emphasized the high degree of deference afforded state court adjudications of *Strickland* claims:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ——, ——, 131 S.Ct. 770, 786–787, 178 L.Ed.2d 624 (2011). "If this standard is difficult to meet"-and it is-"that is

18

because it was meant to be." *Id.* at ———, 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.* at ———, 131 S.Ct., at 786 (internal quotation remarks omitted).

*Burt v. Titlow*, 571 U.S. 12, 19-20 (2013). Thus, "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Id.* at 13 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). *See also Hodges*, 727 F.3d at 534 ("'The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.'") (quoting *Richter*, 131 S.Ct. at 788).

Oliphant raised this claim in his Motion to Withdraw Guilty Plea and the appeal of the denial of this Motion to the state appellate court and the Supreme Court of Ohio. (Doc. No. 8-1, Exh. 6, 22, 30.)

The state appeals court considered Oliphant's ineffective assistance of counsel claims and rejected it on the merits as follows:

{¶ 20} In evaluating ineffective assistance of counsel claims, the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus; *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). To show prejudice, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶ 21} Here, appellant's ineffective assistance claim is based on his trial counsel allegedly misinforming him of the sentence to be imposed.

19

Nevertheless, there is no credible basis in the record to support that trial counsel stated with 100 percent certainty what sentence the court would impose. To the contrary we find that trial counsel may have stated six years as an estimation of a potential sentence, but that there is no credible evidence that he represented that possibility as the court's final sentence.

{22} Appellant confirmed for the court that no one, obviously including trial counsel, made any promises with regard to the sentence to be imposed. Appellant was actually made aware of the potential, maximum sentence of 13.5 years incarceration, and appellant even implied while speaking to the court at sentencing that "seven" years in the penitentiary would hinder his development.

{¶ 23} Further in terms of effective assistance, trial counsel requested and obtained discovery, and advised appellant to accept the plea deal as opposed to facing roughly 30 years incarceration. By doing so appellant was only sentenced to 12 years, despite the prosecution's substantial incriminating evidence, including eyewitness testimony and confessions by appellant. Trial counsel moved for and was granted numerous continuances to allow his client to cooperate with authorities. And lastly, trial counsel advocated for his client to be recognized as a changed man prior to being sentenced, which was undoubtedly in an effort to introduce mitigating circumstances on behalf of his client.

{¶ 24} Based on our review, we cannot say that counsel was ineffective in defending appellant, and thus there is no merit to this potential assignment of error.

*State v. Oliphant*, 2017 WL 3981162, at *4.

Under the doubly deferential standard, this Court cannot say that the state appeals court's conclusion that trial counsel performed effectively on Oliphant's behalf was contrary to or an unreasonable application of clearly established federal law.  As an initial matter, Oliphant's assertions conflict with both the plea agreement and Oliphant's statements during the plea colloquy.  (Doc. No. 8-1, Exh. 3; Doc No. 8-2 at 4-13.)  During the colloquy, Oliphant confirmed he could read and write, that he understood the nature of the charges, and that he had the opportunity to discuss the case with counsel.  (Doc. No. 8-2 at 4-13.)  Oliphant confirmed he

20

understood the maximum penalty he faced on the charges was 13.5 years.  (*Id.* at  10.)  Perhaps most importantly, Oliphant repeatedly confirmed no promises had been made to him outside the terms of the plea agreement: once with his signature on the plea agreement itself, and twice in response to the court's questioning during the plea colloquy.  (Doc. No. 8-1, Exh. 3; Doc No. 8-2 at 13.)

To bolster his claim that trial counsel promised him a maximum sentence of six years, Oliphant submitted two affidavits along with his motion to withdraw his guilty plea: one by Cindy Oliphant, his sister, and another by Sharmiane Haynes, his girlfriend.  (Doc. No. 8-1, Exh. 6.)  Both averred that trial counsel told them Oliphant would not receive more than six years in prison.  (*Id.*) But at the evidentiary hearing on Oliphant's motion to withdraw, Haynes conceded it was possible the six year sentence could have been an estimate by trial counsel, and not a promise or guarantee. (Doc. No. 8-3 at 74.)  She also admitted she never heard trial counsel say the trial judge had agreed to six years.  (*Id.*)  Oliphant himself admitted that trial counsel had told him the trial judge would not agree to a cap on his sentence.  (*Id.* at 35.)  He also conceded he never heard the prosecutor say at any time during the plea hearing that she agreed to a cap of six years.  (*Id.* at 59.)  This evidence supports the conclusion that  trial counsel did nothing more than provide an estimate as to what sentence the trial court would impose.

After the hearing, the trial court found Oliphant's testimony that trial counsel misinformed him of the sentence to be imposed incredible, and found trial counsel's testimony credible.[7]  (Doc. No. 8-1, Exh. 18 at 20.)  The state appellate court, on review of the entire record,

---

[7] As discussed, Oliphant's reliance on *Norris* to support his argument as to why trial counsel's testimony at the hearing should be discounted is misplaced.  *See* n.4, *supra.*

21

concluded that there was no credible evidence to support the contention that trial counsel represented a six year prison term as the court's final sentence.  *State v. Oliphant*, 2017 WL 3981162, at *4.

Furthermore, as the state appeals court noted, counsel obtained discovery on Oliphant's behalf, and despite the state's substantial evidence, including eyewitness testimony and Oliphant's jailhouse confessions, obtained a plea deal for Oliphant where the maximum penalty imposed would be 13.5 years instead of roughly 30 years.  *Id.*  In the negotiated plea deal, the state also agreed not to pursue failure to comply charges.  (Doc. No. 8-1, Exh. 3.)  In addition, counsel obtained a number of continuances to allow Oliphant the opportunity to cooperate with the authorities before sentencing (which he did not do), and advocated for the court to recognize Oliphant as a changed man at sentencing.  *State v. Oliphant*, 2017 WL 3981162, at *4.  These efforts do not establish conduct so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland*, 466 U.S. at 694.

Oliphant also maintains that "[i]t is . . . well settled that ABA Standards 4.1 condemn any defense attorney who lies at any time, which certainly includes a plea bargaining process to induce a plea."  ABA Standard for Criminal Justice 4-4.1 concerns defense counsel's duty to investigate and engage investigators.  AMERICAN BAR ASSOCIATION, CRIMINAL JUSTICE STANDARDS FOR THE DEFENSE FUNCTION (4th Ed. 2015), https://www.americanbar.org/groups/criminal_justice/standards/DefenseFunctionFourthEdition/. In contrast, ABA Standard for Criminal Justice 4-6.2, Negotiated Disposition Discussions, provides that "[d]efense counsel should not knowingly make false statements of fact or law in the course of

disposition discussions." *Id.*  It is true that, while such standards are "only guides," *Strickland*, 466 U.S. at 688, "these standards may be valuable measures of the prevailing professional norms of effective representation . . . ."  *Padilla*, 559 U.S. at 367.  But the fact remains, as stated above, the state courts concluded that there was no credible evidence that trial counsel represented a six year prison term as the court's final sentence.  And Oliphant has failed to rebut those factual determinations by clear and convincing evidence as required by § 2254(e)(1).

Under the circumstances presented here, the state appellate court was not unreasonable in concluding that Oliphant was not denied the effective assistance of counsel.  Accordingly, the Court recommends Oliphant's Second Ground for Relief be denied.

### V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date:        September 3, 2019                 *s/ Jonathan Greenberg*
                                               Jonathan D. Greenberg
                                               United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**